KAREN P. HEWITT
United States Attorney
JOSEPH J.M. ORABONA
Assistant U.S. Attorney
California State Bar No. 223317
Federal Office Building
880 Front Street, Room 6293
San Diego, California  92101-8893
Telephone: (619) 557-7736
Email: joseph.orabona@usdoj.gov

Attorneys for Plaintiff
United States of America

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>          Plaintiff,<br><br>     v.<br><br>RODNEY PARKER (1),<br>ANGELA WITTMER (2),<br><br>          Defendants. | Criminal Case No. 08CR0854-LAB<br><br>Date:  May 19, 2008<br>Time:  2:00 p.m.<br><br>The Honorable Larry A. Burns |

**UNITED STATES' RESPONSE IN OPPOSITION TO DEFENDANT'S MOTIONS TO**

**(1)  DISMISS INDICTMENT DUE TO RACIALLY MOTIVATED INVESTIGATION;**
**(2)  SUPPRESS DUE TO UNLAWFUL SEIZURE;**
**(3)  SUPPRESS DUE TO UNLAWFULLY PROLONGED STOP;**
**(4)  SUPPRESS DUE TO VIOLATION OF MIRANDA;**
**(5)  SUPPRESS INVOLUNTARY STATEMENTS;**
**(6)  SUPPRESS FOR VIOLATION OF THE ELECTRONIC COMMUNICATIONS ACT;**
**(7)  SUPPRESS FRUITS OF UNLAWFUL SEARCH;**
**(8)  DISMISS INDICTMENT DUE TO UNCONSTITUTIONAL STATUTE;**
**(9)  COMPEL DISCOVERY;**
**(10)  COMPEL PRODUCTION OF GRAND JURY TRANSCRIPTS;**
**(11)  DISMISS COUNT THREE;**
**(12)  FILE FURTHER MOTIONS;**
**(13)  SUPPRESS EVIDENCE SEIZED FROM SEARCH OF PHONES; AND**
**(14)  SEVER COUNT FIVE**

**TOGETHER WITH STATEMENT OF FACTS, MEMORANDUM OF POINTS AND AUTHORITIES**

1    The plaintiff, UNITED STATES OF AMERICA, by and through its counsel, Karen P. Hewitt,

2    United States Attorney, and Joseph J.M. Orabona, Assistant United States Attorney, hereby files its

3    Response in Opposition to Defendants' above-referenced Motions.  This Response in Opposition is

4    based upon the files and records of the case, together with the attached statement of facts and

5    memorandum of points and authorities.

6                                                    **I**

7                                    **STATEMENT OF THE CASE**

8         On March 20, 2008, a federal grand jury in the Southern District of California returned a five-

9    count indictment against Defendants RODNEY PARKER ("Defendant Parker") and ANGELA

10   WITTMER ("Defendant Wittmer") [collectively, "Defendants"].  The Indictment charges Defendant

11   Parker with one count of conspiracy to make a false statement in the attempted acquisition of a firearm,

12   in violation of 18 U.S.C. § 371, one count of felon in possession of firearms and ammunition, in

13   violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2), one count of possession of approximately 1,168

14   grams of marijuana with intent to distribute, in violation of 21 U.S.C. § 841(a), and criminal forfeiture

15   pursuant to 18 U.S.C. § 924(d).  The Indictment charges Defendant Wittmer with one count of

16   conspiracy to make a false statement in the attempted acquisition of a firearm, in violation of 18 U.S.C.

17   § 371, and one count of making a false statement in the attempted acquisition of firearms, in violation

18   of  18 U.S.C. §§ 922(a)(6) and 924(a)(2).  On March 25, 2008, Defendants were arraigned on the

19   Indictment, and Defendants made an oral motion to dismiss the Indictment due to a violation of the

20   Speedy Trial Act.  On March 27, 2008, Defendants withdrew their motion to dismiss and entered pleas

21   of not guilty.  On April 14, 2008, Defendant Parker filed several motions to dismiss the Indictment,

22   suppress statements and evidence, compel discovery, compel production of grand jury transcripts,

23   dismiss Count Three in the Indictment, and to grant leave to file further motions. The United States files

24   the following response in opposition to these motions.

25   / /

26   / /

27   / /

28   / /

## II

## STATEMENT OF FACTS

**A.    OFFENSE CONDUCT**

      **1.    Events Leading to Seizure of the Firearms**

On February 16, 2008, at approximately 1:15 p.m., agents with the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF") and Immigration Customs Enforcement ("ICE") conducted surveillance at the Crossroads Gun Show at the Del Mar Fairgrounds, which is in the Southern District of California. During the course of the surveillance, ATF Special Agent Wakelin observed a Hispanic male, accompanied by a white female, drive a green Mercury SUV bearing California license plate number "4UPT113" into the gun show parking lot. Agent Wakelin observed the two individuals exit the car and enter the gun show. Agent Wakelin initiated a query of the Department of Motor Vehicle records and determined that the Mercury SUV was registered to Defendant Parker at 6847 Springfield Street, San Diego, California 92114. Agent Wakelin also obtained a physical description of the Defendant Parker, which matched the Hispanic male who he saw driving the Mercury SUV. Agent Wakelin initiated a criminal records check on Defendant Parker and determined that Defendant Parker had two prior felony convictions and was a registered narcotics offender pursuant to California Health & Safety Code Section 11590.

At approximately 4:30 p.m., Agent Wakelin observed Defendant Parker and the white female exiting the gun show carrying plastic bags. The bag carried by Defendant Parker appeared to contain a box similar in shape and size to a standard box of ammunition. Agent Wakelin observed Defendant Parker and the white female enter the Mercury SUV and leave the gun show.

San Diego Sheriff's Department Detective Berlinksy initiated a traffic stop of the Mercury SUV for a violation of the California Vehicle Code regulating window tint. Detective Berlinksy identified the driver as Defendant Parker and the passenger as Defendant Wittmer. Agents Wakelin and Beals arrived at the scene and identified themselves to Defendants. Agent Wakelin advised Defendant Parker that he was not under arrest and that he did not have to talk with ATF. Defendant Parker said he understood and voluntarily agreed to speak with Agent Wakelin. Defendant Parker said he purchased a fifty-round box of .32 caliber ammunition at the gun show. Defendant Parker freely admitted that he

1    was a convicted felon and that he purchased the ammunition for a friend. Agent Wakelin advised

2    Defendant Parker that he was under arrest.

3        Agents Wakelin and Beals advised Defendant Wittmer that she was not under arrest and that she

4    did not have to talk with ATF. Defendant Wittmer said she understood and voluntarily agreed to speak

5    with Agents Wakelin and Beals. Defendant Wittmer said she was Defendant Parker's girlfriend and that

6    they had just attended the Gun Show at the Del Mar Fairgrounds. Defendant Wittmer said she

7    purchased a handgun at the gun show, which she intended on receiving after the 10-day waiting period.

8    Defendant Wittmer showed ATF a receipt for the purchase of a 9 millimeter handgun. Defendant

9    Wittmer was unable to recall the make and model of the handgun that she had just purchased.

10    Defendant Wittmer said that Defendant Parker had purchased ammunition at the gun show, which was

11    a gift for her uncle. Agents Wakelin and Beals advised Defendant Wittmer that she was being

12    transported to the ATF field office for further questioning.

13        Agent Wakelin performed a search incident to arrest of Defendant Parker and found a box of

14    .32 caliber ammunition, approximately $1,800.00 in cash, and two California driver licenses. Both

15    licenses contained Defendant Parker's photograph, but one license contained his true identity while the

16    other listed another person's name and address.

17        Agents Wakelin and Beals conducted a search incident to arrest of Defendant Parker's Mercury

18    SUV. Agents found a loaded Ruger .45 caliber revolver, a loaded FIE .25 caliber pistol with ten rounds

19    of .45 caliber ammunition, a box of .32 caliber ammunition, and another counterfeit California driver's

20    license with Defendant Parker's photograph and another person's name and address.

21        Agent Wakelin performed a search incident to arrest of Defendant Wittmer and found a small

22    piece of white paper with a handwritten description of the exact make and model of the loaded FIE .25

23    caliber pistol found in the center console of Defendant Parker's Mercury SUV.

24        **2.**      **Defendants' Recorded Statements in the ATF Vehicle**

25        On February 16, 2008, at approximately 5:00 p.m., Agent Beals placed a recording device in his

26    government vehicle prior to placing the Defendants in the vehicle while agents conducted a search

27    incident to arrest/tow of the Mercury SUV. Defendants engaged in a conversation concerning the

28    purchase of the ammunition at the Del Mar Gun Show, the purchase of the 9 millimeter Smith &

Wesson firearm, the source of the money found on Defendant Parker, and the ownership of the guns found in Defendant Parker's SUV.

While Defendants were seated in the back of the government vehicle, they began to discuss the ammunition purchased at the Gun Show, and the following is an excerpt of the conversation:

> PARKER: I told them I bought a box of ammunition for...your uncle.
>
> WITTMER: You did?
>
> PARKER: Yeah.
>
> WITTMER: So. Who bought it? You or me?
>
> PARKER: I did.
>
> WITTMER: So what! I'm giving it to him, it's his birthday.
>
> WITTMER: You know?
>
> WITTMER: Don't trip.
>
> WITTMER: I can't believe this shit.
>
> WITTMER: It's a 9 millimeter Smith and Wesson, correct?
>
> PARKER: Mmhm.
>
> WITTMER:  He's all, you don't know the make and model of it? I'm all, that is the make and model, is it not?
>
> WITTMER: Fucking asshole cocksuckers.

Defendants engaged in the following conversation as ATF agents uncovered two firearms in the center console of Defendant Parker's Mercury SUV - a loaded Ruger .45 caliber revolver and a loaded FIE .25 caliber pistol with ten rounds of .45 caliber ammunition:

> PARKER: Many they're trippin.  They found those IDs...Oh, check it out, they found the guns, they found them.
>
> WITTMER: Fuck!
>
> WITTMER: Fuck...Are you gonna have bail?
>
> PARKER: No.
>
> WITTMER Why?
>
> PARKER: I don't know. Unless we say they was yours. Its like, its like ummmm...see how that works...mmmm.
>
> WITTMER: Hmm. Maybe they found (UNINTELLIGIBLE).

08CR0854-LAB

1    PARKER: (UNINTELLIGIBLE)...gun

2    WITTMER: Do you want me to say they're mine?

3    PARKER: No.

4    WITTMER: I will...I will, I don't care, I don't give a fuck about them.

5    As Agent Beals carried the Ruger revolver that was found in Defendant Parker's vehicle to the

6    front of the government vehicle where Defendants could see it, Defendants engaged in the following

7    conversation:

8    PARKER: I don't know how things are going to be.  Oh there it is [referring to the
     Ruger revolver found in the SUV]

9

10    WITTMER: How what's going to be?

      WITTMER: Just stick to the story is fine. Okay? Promise?
11
      PARKER: (UNINTELLIGIBLE)
12
      WITTMER: Hmm?
13
      PARKER: (UNINTELLIGIBLE)
14
      WITTMER: What?
15
      PARKER: the money or the guns?
16
      WITTMER: For both, just say you don't know.  I mean, you let somebody borrow your
17    truck. You know? I'm serious.

18    In the same conversation above, Defendant Parker admits to Defendant Wittmer that he has

19    drugs at his house inside his truck:

20    PARKER: I still got two bricks at my house.

21    WITTMER: Where?

22    PARKER: My truck.

23    WITTMER: Alright.

24    Defendants discuss getting out of jail on bail and running away to Texas.  During this

25    conversation, Defendant Wittmer again tells Defendant Parker to stick to the story:

26    WITTMER: Whatever you do, make sure you tell them that strap's for me because I'm
      home by myself all the time. That's what I told you.
27
      PARKER: The other two?
28
      WITTMER: The other two...fucking plead the fifth. You know what I mean?

6                                                                          08CR0854-LAB

PARKER: My prints are all over them.

WITTMER: Don't matter. Don't say shit. Don't say a fucking word. Please...Tell them to suck a dick!

Defendants discuss the possibility of government agents executing a search warrant at Defendant Parker's residence. Wittmer says, "They're going to hit the pad." The following is an excerpt of this conversation:

WITTMER: I'm going to tell Julia to get rid of everything.

PARKER: Hmm?

WITTMER: Tell her to get everything out.

WITTMER: Just tell them it was my...you know, it...I bought the gun, it's my gun. What the fuck. That way I'm out and I can get you out.

PARKER: It's your gun; you're not going to be out.

WITTMER: Why? No, the one we just bought...I just bought.

PARKER: The other two?

WITTMER: The other two, just fucking don't say shit. Just let me get you out, okay?

At approximately 6:02 p.m., Agent Beals returned to his government vehicle and transported Defendants to the ATF Field Office for processing and paperwork.

### 3.    Post-Miranda Statements

On February 16, 2008, ATF agents advised Defendant Wittmer of her <u>Miranda</u> rights. Defendant Wittmer acknowledged that she understood his <u>Miranda</u> rights, and he agreed to waive those rights and speak with the ICE agents without the presence of counsel. Defendant Wittmer stated that she has been addicted to methamphetamine for several years and smokes the drug about twice per day. Defendant Wittmer also stated that she smoked methamphetamine before attending the gun show. Defendant Wittmer said she often smokes methamphetamine with Defendant Parker.

### 4.    Events Leading to Seizure of the Marijuana

On February 17, 2008, at approximately 4:30 p.m., ATF agents executed a search warrant at the residence where Defendant Parker has been renting a room for the past six years - 6847 Springfield Street, San Diego, California. ATF agents found a Ford Bronco registered to Defendant Parker at the residence. ATF agents found marijuana inside the Ford Bronco, as well as a large digital scale, which

1   agents believed was being used to distribute the marijuana.  In total, ATF agents found approximately

2   1,167 grams of marijuana.

3         During the execution of the search warrant, agents spoke with Julia Chavez, the owner of the

4   residence.  Chavez told agents that she has rented a room to Defendant Parker for the past six years.

5   Defendant Parker pays $400.00 per month in rent and occupies two bedrooms in the house, stores

6   several vehicles in the back of the residence, and stores his Ford Bronco and Corvette in the garage.

7         **C.    DEFENDANTS' CRIMINAL HISTORY**

8         Defendant Parker has a serious criminal history.  On September 9, 1997, Defendant Parker was

9   convicted in San Diego Superior Court for inflicting corporal injury on a spouse, in violation of

10  California Penal Code § 273.5, and received a sentence of 270 days in jail and 3 years probation.  On

11  January 5, 1999, Defendant Parker's probation was revoked, reinstated and extended to January 4, 2002.

12  On January 4, 2001, Defendant Parker was convicted in San Diego Superior Court for driving under the

13  influence of a controlled substance (DUI), in violation of California Vehicle Code § 23152, and was

14  sentenced to 60 days in jail.  On January 11, 2001, as a result of his DUI conviction, the state court held

15  that Defendant was in violation of his probation on his prior felony conviction for inflicting corporal

16  injury on a spouse, in violation of California Penal Code § 273.5.  The San Diego Superior Court

17  sentenced Defendant Parker to an additional term of 2 years in prison.  On November 6, 2001,

18  Defendant Parker was convicted of possession of a controlled substance for sale, in violation of

19  California Health & Safety Code § 11378, and received a sentence 16 months in prison.  On May 13,

20  2004, Defendant Parker violated his parole and returned to prison.  On April 5, 2005, Defendant Parker

21  violated his parole and returned to prison.  On June 28, 2006, Defendant Parker violated his parole and

22  returned to prison.        While Defendant Wittmer admitted that she has a substance abuse problem, she

23  does not have any prior criminal convictions.

24  / /

25  / /

26  / /

27  / /

28  / /

1

**III**

2

**THE UNITED STATES' RESPONSE IN OPPOSITION TO DEFENDANT'S MOTIONS
ALONG WITH MEMORANDUM OF POINTS AND AUTHORITIES**

3

4

**A.    THE COURT SHOULD DENY THE MOTION TO DISMISS DUE TO AN
ALLEGED RACIALLY MOTIVATED INVESTIGATION**

5

6

Defendants contend that government agents initiated their pre-contact investigation based solely

on race, and therefore, violated the Constitution. [Def. Motion at 6-7.][1] While there is no Ninth Circuit

7

precedent directly on point, the law of the Sixth and Eighth Circuits demonstrates that Defendants'

8

argument lacks merit.  Defendants have failed to meet their burden of demonstrating by a preponderance

9

of the evidence that government agents approached Defendant Parker based solely on his race.

10

The Constitution prohibits the selective enforcement of law based on consideration of race and

11

"the constitutional basis for objecting to intentionally discriminatory application of laws is the Equal

12

Protection Clause ...." United States v. Frazier, 408 F.3d 1102, 1108 (8th Cir. 2005) (citing Johnson v.

13

Crooks, 326 F.3d 995, 999 (8th Cir. 2003) (quoting Whren v. United States, 517 U.S. 806, 813, 116

14

S.Ct. 1769, 135 L.Ed.2d 89 (1996))).  In Frazier, the Eighth Circuit recognized that encounters with

15

officers may violate the Equal Protection Clause when initiated solely based on racial considerations.

16

Frazier, 408 F.3d at 1108; United States v. Avery, 137 F.3d 343, 353 (6th Cir. 1997); see also United

17

States v. Woods, 213 F.3d 1021, 1022-23 (8th Cir. 2000); United States v. Nichols, 512 F.3d 789, 795

18

(6th Cir. 2007).  In order for Defendants to prevail on an Equal Protection claim, it is well established

19

that a defendant "has the burden of proving the existence of purposeful discrimination." McCleskey v.

20

Kemp, 481 U.S. 279, 292 (1987) (internal quotations omitted).  More specifically, Defendants must

21

"prove that the decisionmakers in his [or her] case acted with discriminatory purpose." Id.; see also

22

Avery, 137 F.3d at 355.  Defendants have the burden of demonstrating by a preponderance of the

23

evidence that the police officer or government agent decided to approach him or her solely because of

24

his or her race.   United States v. Travis, 62 F.3d 170, 174 (6th Cir. 1995).  Only after Defendants meet

25

this initial burden of establishing a *prima facie* case must the government then "articulate a race-neutral

26

reason for its action, or identify a compelling governmental interest in the race-based [action]." Avery,

27

28

_____

[1] "Def Mot." refers to Defendant Parkers Motions, Docket No. 27, filed on April 14, 2008, and
joined by Defendant Wittmer, Docket No. 31, filed on April 14, 2008.

1   137 F.3d at 356. The use of race in the pre-contact stage of an investigation does <u>not</u> give rise to any

2   constitutional protections. <u>Travis</u>, 62 F.3d at 174 (relying on <u>United States v. Brignoni-Ponce</u>, 422 U.S.

3   873 (1975)). "Consequently, when officers compile several reasons before initiating an interview, as

4   long as some of those reasons are legitimate, there is no Equal Protection violation." <u>Travis</u>, 62 F.3d at

5   174 (citing <u>Mt. Healthy City Sch. Dist. Bd. Of Educ. v. Doyle</u>, 429 U.S. 274 (1977)).

6       Here, as detailed in the Complaint signed by Special Agent Scott Wakelin of the Bureau of

7   Alcohol, Tobacco, Firearms and Explosives (ATF) [<u>see</u> Docket No. 1, attached hereto as Exhibit 1],

8   police officers and government agents developed several reasons for approaching Defendant Parker that

9   were completely independent of his race. First, Agent Wakelin observed what he believed to be prison-

10  type tattoos on the forearms and elbows of Defendant Parker. Agent Wakelin initiated a records check

11  on the license plate of Defendant Parker's vehicle. Agent Wakelin obtained a physical description of

12  a Hispanic male that he was able to match to the person he observed exiting the vehicle and entering the

13  gun show, later identified as Defendant Parker. Agent Wakelin also learned through the records query

14  that Defendant Parker had two prior felony convictions. During his surveillance, Agent Wakelin

15  observed Defendants exiting the gun show carrying plastic bags that appeared to contain boxes similar

16  in shape and apparent weight to a standard box of ammunition. Based on the totality of these

17  circumstances, police officers and government agents made contact with Defendant Parker.

18      Defendant Parker attempts to distort the description used by Agent Wakelin in his report. Agent

19  Wakelin used the descriptive term "Hispanic male" to describe the person he observed driving the green

20  Mercury and who had prison-type tattoos. This distortion of Agent Wakelin's report, coupled with

21  Defendant Parker's declaration, does not amount to a preponderance of the evidence demonstrating that

22  Agent Wakelin made contact with Defendant Parker based solely on his race. Defendants have failed

23  to make a *prima facie* case for discrimination.[2]  Agent Wakelin compiled several reasons for making

24  contact with Defendant Parker, therefore, there is no Fourth Amendment violation. As such, the Court

25  should decline to hold an evidentiary hearing and should deny Defendants' motion to dismiss the

26  indictment based on an alleged racially-motivated investigation.

27  ────────────────

28      [2] Defendants rely on <u>United States v. Cuevas-Ceja</u>, 58 F. Supp.2d 1175 (D. Or. 1999) for the
    proposition that an equal protection violation in the initiation of an investigation is fatal to the
    indictment. However, Defendants fail to note that the district court in <u>Cuevas-Ceja</u> found that there
    were several reasons justifying the bus interdiction program initiated by law enforcement, and held that
    the investigation did not violate the Fourth Amendment. <u>Id.</u> at 1185.

1

**B.    THE COURT SHOULD DENY THE MOTION TO SUPPRESS DUE TO AN UNLAWFUL SEIZURE**

2

Defendants allege that Detective Berlinsky made a mistake of law when he conducted his traffic stop of Defendant Parker's green Mercury based on a violation of the California Vehicle Code regulating window tint. [Def. Mot. at 8.] Defendants further contend that the traffic stop should have been limited to an investigation of the window tint. [Def. Mot. at 8.] Defendants confuse a mistake of law with a mistake of fact. As such, Defendants' argument lacks merit.

A police officer needs "only reasonable suspicion in the context of investigative traffic stops." United States v. Lopez-Soto, 205 F.3d 1101, 1105 (9th Cir. 2000). "Reasonable suspicion is formed by specific, articulable facts which, together with objective and reasonable inferences, form the basis for suspecting that the particular person detained is engaged in criminal activity." Id. (internal quotation marks omitted). We review de novo the district court's determination of whether there was reasonable suspicion. United States v. Arvizu, 534 U.S. 266, 275, 122 S.Ct. 744, 151 L.Ed.2d 740 (2002). The Ninth Circuit has distinguished between mistakes of fact and mistakes of law when an officer has initiated a traffic stop based on a mistaken belief. United States v. Miguel, 368 F.3d 1150, 1153 (9th Cir. 2004). "[I]f an officer makes a traffic stop based on a mistake of law, the stop violates the Fourth Amendment." United States v. Twilley, 222 F.3d 1092, 1096 (9th Cir. 2000). For example, in United States v. King, 244 F.3d 736 (9th Cir. 2001), the officer stopped a car with a placard hanging from the rearview mirror, which he believed was unlawful. Id. at 737-38. Construing the traffic ordinance, the Ninth Circuit concluded that placing an object in close proximity but not directly on the windshield did not violate the traffic ordinance. Id. at 740. Thus, the Ninth Circuit held that the officer made a mistake of law and did not have reasonable suspicion to stop the vehicle. Id. at 741-42.

In contrast, "[a] mere mistake of fact will not render a stop illegal, if the objective facts known to the officer gave rise to a reasonable suspicion that criminal activity was afoot." United States v. Mariscal, 285 F.3d 1127, 1131 (9th Cir. 2002). "[A]n officer's correct understanding of the law, together with a good-faith error regarding the facts, can establish reasonable suspicion." King, 244 F.3d at 739. For instance, in United States v. Dorais, 241 F.3d 1124 (9th Cir. 2001), the Ninth Circuit held that an officer's mistaken belief that a rental car was "overdue" was a mistake of fact. Id. at 1131.

/ /

1    In this case, Detective Berlinsky, who has been in law enforcement for twenty-four years, of

2  which he has spent twenty of those years with San Diego County police departments, was notified by

3  Agent Wakelin of his investigation of the registered owner of a green Mercury SUV. [See Berlinsky's

4  Report, attached hereto as Exhibit B.]  Detective Berlinsky learned that the registered owner, later

5  identified as Defendant Parker, had entered the gun show and was a convicted felon. [Id.]  Detective

6  Berlinsky drove located the green Mercury SUV in the gun show parking lot and observed that the front

7  driver side and passenger windows were tinted too dark, in violation of California Vehicle Code Section

8  26708(a)(1).  [Id.] Detective Berlinsky parked near the green Mercury SUV and observed Defendants

9  exit the gun show carrying yellow plastic bags with heavy objects in them, consistent with boxes of

10  ammunition.  [Id.] Detective Berlinsky, who has been involved in over one hundred traffic stops

11  involving window tinting, was unable to see Defendants through the dark window tint – Detective

12  Berlinsky was able to see only shadows, which is an indication that the window tint is in violation of

13  the law.  Detective Berlinsky followed the green Mercury SUV out of the gun show parking lot and

14  conducted a traffic stop based on his observations. [Id.]

15    An officer has reasonable suspicion to stop a car with tinted windows when California law

16  prohibits certain tinting of windows, even if it is later established that the window tint did not violate

17  the law.  See United States v. Wallace, 213 F.3d 1216, 1220-21 (9th Cir. 2000).  Detective Berlinksy

18  stopped the car based on (1) his familiarity with the standard contained in the law addressing window

19  tinting, (2) his twenty-four years of law enforcement training and experience, including more than one

20  hundred traffic stops involving window tinting, and (3) his inability to see Defendants through the tinted

21  windows during the day time.  This was sufficient to establish reasonable suspicion.  Even assuming

22  Detective Berlinsky made a good-faith error concerning the window tint on Defendant Parker's car, that

23  error would be a mistake of fact, not a mistake of law, and would still support reasonable suspicion to

24  perform the stop.  Moreover, Detective Berlinsky observed a convicted felon exiting a gun show

25  carrying what appeared to be boxes of ammunition, which is a violation of California law.  This

26  observation, while not the basis for the traffic stop, would have also provided reasonable suspicion to

27  perform the stop.  Because Detective Berlinsky had reasonable suspicion to stop the car, there was no

28  Fourth Amendment violation.  As such, Defendants motion to suppress should be denied.

C.    **THE COURT SHOULD DENY THE MOTION TO SUPPRESS DUE TO AN UNLAWFULLY PROLONGED STOP**

An officer may broaden the scope of his investigation if he notices additional suspicious factors that are particularized and objective. United States v. Murillo, 255 F.3d 1169, 1174 (9th Cir. 2001); see also United States v. Mayo, 394 F.3d 1271, 1276 (9th Cir. 2005) (The period of detention was permissibly extended because new grounds for suspicion of criminal activity, based upon specific, articulable facts, continued to unfold.). "To justify an investigative stop, a police officer must have reasonable suspicion that a suspect is involved in criminal activity. Reasonable suspicion is formed by 'specific articulable facts' which, together with objective and reasonable inferences, form the basis for suspecting that the particular person is engaged in criminal activity." United States v. Lopez-Soto, 205 F.3d 1101, 1104-05 (9th Cir. 2000) (internal citations and quotations omitted).

When a stop is extended, there is no specific time limit to how long the detention may be extended. United States v. Sharpe, 470 U.S. 675, 685 (1985) (holding that, under the circumstances, a twenty-minute detention by South Carolina Highway Patrol awaiting arrival of DEA agent was not too long). "An investigative stop is not subject to strict time limitations as long as the officer is pursuing the investigation in a diligent and reasonable manner." Haynie v. County of Los Angeles, 339 F.3d 1071, 1076 (9th Cir. 2003) (citing Sharpe, 470 U.S. at 686-87) (Sixteen to twenty additional minutes to search the vehicle while defendant was handcuffed in the rear of the police car was not too long.).

Here, Defendants argue that Detective Berlinsky performed an unlawfully prolonged stop. [Def Mot. at 8-9.] Yet, Detective Berlinksy was working with federal agents, and had allow time to secure the occupants of the vehicle and have the federal agents arrive at the scene. Both Detective Berlinsky and federal agents discovered the ammunition inside the car, confirming what each had observed at the gun show. This finding justified prolonging the stop to further investigate whether there were any firearms inside the vehicle for which the ammunition was purchased. Thus, the prolonged stop was did not exceed the scope or duration of the investigation. As such, the motion to suppress should be denied.

//

//

//

1

**D.    THE COURT SHOULD DENY THE MOTION TO SUPPRESS IN VIOLATION OF MIRANDA**

2

3    Defendants move to suppress any statements made following his invocation of his right to

4    silence, citing Miranda v. Arizona, 384 U.S. 436 (1966).  Defendant specifically asks for a suppression

5    hearing to determine the admissibility of any statements.  As explained further below, the United States

6    does not believe that a suppression hearing is necessary to prove admissibility; however, if the Court

7    chooses to hold an evidentiary hearing on Defendants' Motion, the United States will prove that

8    Defendants' statements were voluntary, Defendant was not subject to custodial interrogation, and the

9    statements are, therefore, admissible.

10    Defendants argue that their pre-arrest statements should be suppressed.  However, these

11    statements should not be suppressed because Defendants were not in custody at that time.  See Miranda,

12    384 U.S. 436 (holding that under the Fourth Amendment a person must be advised of his rights prior

13    to questioning after custodial arrest); United States v. Butler, 249 F.3d 1098 (9th Cir. 2001) ("The sine

14    qua non of Miranda is custody.").  After the traffic stop performed by Detective Berlinsky, ATF Agent

15    Wakelin approached Defendants and advised them that they were not under arrest and that Defendants

16    did not have to speak with them if they chose not to.  Defendant Parker and Defendant Wittmer

17    acknowledged that he/she understood this warning and volunteered statements.  Defendant Parker

18    admitted he was a convicted felon and that he had purchased ammunition at the gun show for a friend.

19    Defendant Wittmer admitted she purchased a handgun at the gun show, but could not recall the make

20    and model of the gun. Defendant Wittmer also admitted she had purchased ammunition at the gun show

21    for her uncle. ATF agents advised Defendants that they were under arrest and being detained.  These

22    pre-arrest statements were voluntary and made while Defendants were not in custody.  As such, these

23    statements should not be suppressed.

24    Defendants were transported to the ATF station for processing.  Defendant Parker was advised

25    of his Miranda rights, and decided to invoke his right to remain silent.  Defendant Parker does not

26    dispute that no custodial interrogation occurred after Defendant invoked his right to silence.  Defendant

27    Wittmer was advised of her Miranda rights, and she agreed to waive her rights and speak with agents

28    without the presence of an attorney.  The video recording of Defendant Wittmer's statements show she

was properly advised of her rights, knowingly and intelligently waived her rights, and spoke freely with ATF agents. Neither Defendant alleges coercion, threats, or promises induced him/her to make any statements. Defendants do not allege that law enforcement officers violated his constitutional rights by continuing to question him after he invoked. As such, Defendants' motion to suppress statements should be denied.

### E.    THE COURT SHOULD DENY THE MOTION TO SUPPRESS BECAUSE THE STATEMENTS MADE BY DEFENDANTS WERE VOLUNTARY

Defendant Parker did not make a post-arrest statement because he invoked his right to remain silent. Defendant Parker's argument is that, because he made statements after he invoked, statements that are not articulated in his declaration, Defendant Parker is entitled to an evidentiary hearing. Defendant clearly fails to articulating a basis that any form of interrogation occurred. Miranda, 384 U.S. at 478 ("The fundamental import of the privilege while an individual is in custody is . . . whether he can be interrogated . . . Volunteered statements of any kind are not barred by the Fifth Amendment . . . ."). Without interrogation, there can be no Miranda violation, and a voluntary statement is admissible. See Medeiros v. Shimoda, 889 F.2d 819, 825 (9th Cir. 1989). For all the above reasons, this Court should deny Defendant's Motion. See Batiste, 868 F.2d at 1092 (stating that Government proffer alone is adequate to defeat a motion to suppress where the defense fails to adduce specific and material disputed facts). For these reasons, Defendant Parker's motion to suppress his statements should be denied.

Under Ninth Circuit and Southern District precedent, as well as Southern District Local Criminal Rule 47.1(g)(1)-(4), a defendant is entitled to an evidentiary hearing on a motion to suppress only when the defendant adduces specific facts sufficient to require the granting of the defendant's motion. United States v. Batiste, 868 F.2d 1089, 1093 (9th Cir. 1989) ("[T]he defendant, in his motion to suppress, failed to dispute any material fact in the government's proffer. In these circumstances, the district court was not required to hold an evidentiary hearing."); United States v. Moran-Garcia, 783 F. Supp. 1266, 1274 (S.D. Cal. 1991) (stating that boilerplate motion containing indefinite and unsworn allegations was insufficient to require evidentiary hearing on defendant's motion to suppress statements); Crim. L.R. 47.1g(1) (stating that "[c]riminal motions requiring predicate factual finding shall be supported by declaration(s). . . . The Court need not grant an evidentiary hearing where either party fails to properly support its motion for opposition.").

1    Here, Defendant Wittmer made a post-arrest statement.  It is unclear what Defendant Wittmer

2    is challenging with regard to the voluntariness of her statements.  Defendant Wittmer has failed to

3    support provide a declaration in support of her motion, in clear violation of Criminal Local Rule 47.1(g).

4    Moreover, Defendant Wittmer's mere joinder of Defendant Parker's motion fails to establish a <u>Miranda</u>

5    violation, clearly making it unnecessary to hold an evidentiary hearing in this case.  Cf. <u>United States</u>

6    <u>v. Howell</u>, 231 F.3d 616, 620 (9th Cir. 2000) ("An evidentiary hearing on a motion to suppress need be

7    held only when the moving papers allege facts with sufficient definiteness, clarity, and specificity to

8    enable the trial court to conclude that contested issues of fact exist." (citation omitted).  As such,

9    Defendant Wittmer's motion to suppress her statements should be denied.

10    **F.    THE COURT SHOULD DENY THE MOTION TO SUPPRESS BECAUSE THERE WAS NO VIOLATION OF ELECTRONIC COMMUNICATIONS ACT**

11

12    Defendants contend that they had a reasonable expectation of privacy while seated in the back

13    seat of an unmarked government vehicle, and therefore, the tape-recorded statements should be

14    suppressed in violation of the Fourth Amendment and the Electronic Communications Act. [Def Mot.

15    at10-11.]  The test for whether a reasonable expectation of privacy exists has two prongs: (1) whether

16    the speaker exhibited a subjective expectation of privacy; and (2) whether that expectation of privacy

17    is one that society is willing to recognize as reasonable.  <u>Katz v. United States</u>, 389 U.S. 347 (1967);

18    <u>United States v. Jurado</u>, 26 Fed. Appx. 640, 2001 WL 1507268 (9th Cir., Nov. 27, 2001).  Defendants'

19    conversation in the back seat of an unmarked federal government vehicle meets neither of these prongs.

20    In <u>Jurado</u>, the Ninth Circuit held that the district court properly denied the motion to suppress

21    the secretly recorded conversation of the defendant and co-defendant in the back of a patrol car.  Id. at

22    *1.  Defendants try to distinguish <u>Jurado</u> by arguing that the patrol car was marked, while in the instant

23    case, the government vehicle was unmarked.  However, this is a distinction without a difference.  Agent

24    Beals advised both Defendant Parker and Defendant Wittmer that he was placing them in the back of

25    his government vehicle.  The government vehicle contained a visible control box underneath the radio

26    and the rear flashing lights were operating (with a noticeable ticking sound) during Defendants' secretly

27    recorded conversation.  As such, Defendants cannot assert that they had an expectation of privacy while

28    knowingly seated in the back of an unmarked federal government vehicle.

//

16                                                    08CR0854-LAB

Even assuming that Defendants had a subjective expectation of privacy, it is not an expectation that society is willing to recognize.  The Eighth, Tenth, and Eleventh Circuits have addressed the issue and have rejected Fourth Amendment and Electronic Communications Act challenges to secretly taped conversations of a defendant in a police car, each finding that a subjective expectation of privacy by a defendant in a police car is unjustified.  See United States v. Clark, 22 F.3d 799, 802 (8th Cir. 1994); United States v. Turner, 209 F.3d 1198, 1201 (10th Cir. 2000); United States v. McKinnon, 985 F.2d 525, 528 (11th Cir. 1993).  As such, Defendants' motion to suppress should be denied.

### G.    THE COURT SHOULD DENY THE MOTION TO SUPPRESS AS FRUITS OF AN UNLAWFUL SEARCH OF DEFENDANT PARKER'S CAR

The Supreme Court has held repeatedly that the Fourth Amendment requires courts to consider the totality of the circumstances surrounding a law-enforcement officer's decision to make an investigative stop.  Defendant argues that government agents unlawfully searched his vehicle in violation of the Fourth Amendment. [Def. Mot. at 12.]  However, Defendants' argument fails because it is foreclosed by controlling Supreme Court precedent in Whren v. United States, 517 U.S. 806, 810 (1996), Terry v. Ohio, 392 U.S. 1 (1968), and Brendlin v. California, 122 S.Ct. 2400, 168 L.Ed.2d. 132 (2007).  Based on these controlling precedents and other Ninth Circuit case law, there was no Fourth Amendment violation.  For the reasons set forth below, an evidentiary hearing is unnecessary, and Defendant's motion to suppress evidence should be denied.

### 1.    Officers Had Reasonable Suspicion to Conduct a Traffic Stop.

The officers' investigatory stop of Defendant's car implicates the Fourth Amendment "because stopping an automobile and detaining its occupants constitute a seizure...even though the purpose of the stop is limited and the resulting detention quite brief."  Delaware v. Prouse, 440 U.S. 648, 653, (1979) (internal quotation marks omitted).  Investigatory traffic stops are akin to the on-the-street encounters addressed in Terry v. Ohio, 392 U.S. 1 (1968).  Accordingly, the same objective standard applies: a police officer may conduct an investigatory traffic stop if the officer has "reasonable suspicion" that a particular person "has committed, is committing, or is about to commit a crime."  United States v. Lopez-Soto, 205 F.3d 1101, 1104 (9th Cir.2000).

Officers have reasonable suspicion when "specific, articulable facts ... together with objective and reasonable inferences, form the basis for suspecting that the particular person detained is engaged

in criminal activity." <u>Lopez-Soto</u>, 205 F.3d at 1105 (internal quotation marks omitted).  The reasonable suspicion analysis takes into account the totality of the circumstances.  <u>United States v. Montero-Camargo</u>, 208 F.3d 1122, 1129 (9th Cir.2000) (en banc).  "This process allows officers to draw on their own experience and specialized training to make inferences from and deductions about the cumulative information available to them."  <u>United States v. Arvizu</u>, 534 U.S. 266, 273 (2002).

A traffic violation alone is sufficient to establish reasonable suspicion.  <u>Whren v. United States</u>, 517 U.S. 806, 810 (1996); <u>Delaware v. Prouse</u>, 440 U.S. 658, 659 (1979);  <u>United States v. Willis</u>, 431 F.3d 709, 714-17 (9th Cir.2005).  In <u>Whren</u>, the officers observed a truck that remained stopped at the intersection for what seemed an unusually long period of time - about twenty seconds.  517 U.S. at 807.  As the officers made a u-turn, the truck suddenly turned right without signaling and sped off at an "unreasonable" speed.  <u>Id.</u>  Officers followed the truck, initiated a traffic stop, and observed two large plastic bags that appeared to contain crack cocaine.  <u>Id.</u>  The Court held that, in general, "the decision to stop an automobile is reasonable where the police have probable cause to believe that a traffic violation has occurred."  517 U.S. at 810;  <u>Willis</u>, 431 F.3d at 715 ("<u>Whren</u> stands for the proposition that if the officers have probable cause to believe that a traffic violation occurred, the officers may conduct a traffic stop.").  The Ninth Circuit has interpreted <u>Whren</u> as applying generally to traffic code violations.  <u>See Willis</u>, 431 F.3d at 715 (describing <u>Whren</u> as sanctioning all stops where the officers have cause to "believe that the petitioner violated the traffic code").

Our case is similar to <u>Whren</u>.  Detective Berlinsky followed the green Mercury SUV registered to Defendant Parker based on his observations of window tinting in violation of California law.  As soon as Defendant Parker exited the gun show parking lot, Detective Berlinksy performed a traffic stop using his lights and sirens.  The traffic violation was sufficient to establish reasonable suspicion for Detective Berlinksy to conduct the traffic stop.  In addition, Detective Berlinsky observed a known convicted felon exit the gun show carrying a yellow plastic bag with a heavy object in it, consistent with a box of ammunition.  These facts are specific, articulable, and based upon the personal observations of Detective Berlinsky.  For these reasons, an evidentiary hearing is unnecessary, and Defendant's motion to suppress evidence should be denied.

/ /

**2.    Search of Passenger Compartment After Arrest Was Lawful.**

When officers have made an arrest of the occupant of an automobile, the officers may, as a contemporaneous incident of that arrest, search the passenger compartment of that automobile.  New York v. Belton, 453 U.S. 454, 460-61 (1981).  "It follows from this conclusion that the police may also examine the contents of any containers found within the passenger compartment, for if the passenger compartment is within reach of the arrestee, so also will containers in it be within his reach."  Id.  For his own safety a police officer may perform a protective sweep of the passenger compartment of an automobile if he possesses a reasonable belief that the suspect is dangerous and that he may gain immediate control of a weapon. Michigan v. Long, 463 U.S. 1032, 1049 (1983).  Here, there is simply no question that ATF agents' discovery of ammunition inside the vehicle owned by a convicted felon permitted ATF agents to perform a protective sweep of the entire passenger compartment, including the center console, where two loaded handguns were found.  Contrary to Defendant's assertion, the agents were justified in performing the search inside the vehicle based on both the independent observations made by both Detective Berlinsky and ATF agents concerning Defendants exiting the gun show with plastic bags containing what appeared to be boxes of ammunition.  Thus, the scope of the search of Defendant Parker's vehicle was not so limited.  As such, Defendants' motion should be denied.

**3.    The Inventory Search Was Lawful**

When a vehicle enters police custody, law enforcement officers are permitted to inventory search the vehicle and inventory and impound its contents.  South Dakota v. Opperman, 428 U.S. 364 (1976).  In Opperman, a car was impounded after having twice been ticketed for being illegally parked. Pursuant to the impound procedure, the contents of the car were inventoried during an inventory search of the vehicle.  Marijuana was discovered.  The vehicle inventory search was lawful and justified to protect law enforcement against unjustified claims of lost or stolen property and to protect law enforcement officers from possible danger. Id. at 369.

Here, government agents' inventory search revealed the two loaded handguns and boxes of ammunition inside the vehicle.  The traffic stop for window tinting, as discussed above, was lawful, Defendant Parker's car was lawfully seized because it contained illegal firearms and ammunition that Defendant Parker, as a convicted felon, possessed unlawfully.  As agents with ATF, Agent Wakelin and

1    Beals had the authority to inventory search Defendant Parker's vehicle. Thus, the inventory search of

2    the vehicle was lawful. As such, the motion to suppress should be denied.

3    **H.    THE COURT SHOULD DENY THE MOTION TO DISMISS DUE TO AN UNCONSTITUTIONAL STATUTE – FACIALLY AND AS APPLIED**

4
5    The argument that Title 18, United States Code, Section 922(g)(1) is unconstitutional facially

6    and as applied is foreclosed by existing precedent. See United States v. Hanna, 55 F.3d 1456, 1462 (9th

7    Cir. 1995); United States v. Davis, 242 F.3d 1162, 1162 (9th Cir. 2001). Defendant Parker

8    acknowledges that his argument is directly contrary to Ninth Circuit precedent. [Def. Mot. at 12-13.]

9    As such, Defendant Parker's motion should be denied.

10   **I.    THE COURT SHOULD DENY THE MOTION TO COMPEL DISCOVERY**

11   As of the date of this Motion, the United States has produced forty-one pages of discovery. The

12   United States will continue to comply with its obligations under Brady v. Maryland, 373 U.S. 83 (1963),

13   the Jenks Act (18 U.S.C. §3500 et seq.), and Rule 16 of the Federal Rules of Criminal Procedure ("Fed.

14   R. Crim. P."). At this point the United States has received **no** reciprocal discovery. In view of the

15   below-stated position of the United States concerning discovery, the United States respectfully requests

16   the Court issue no orders compelling specific discovery by the United States at this time.

17   **1, 2.    Defendant's Statements And Arrest Reports**

18   The United States has turned over a number of investigative reports, including those which

19   disclose the substance of Defendant's oral statements made in response to routine questioning by United

20   States' law enforcement officers. If additional reports by United States' agents come to light, the United

21   States will supplement its discovery. The United States recognizes its obligations under Fed. R. Crim.

22   P. 16(a)(1)(A) to disclose "the substance of any relevant oral statement made by the defendant, before

23   or after arrest, in response to interrogation by a person the defendant knew was a government agent if

24   the government intends to use the statement in trial." However, the United States is not required under

25   Fed. R. Crim. P. 16 to deliver oral statements, if any, made by a defendant to persons who are not United

26   States' agents. Nor is the United States required to produce oral statements, if any, voluntarily made

27   by a defendant to United States' agents. See United States v. Hoffman, 794 F.2d 1429, 1432 (9th Cir.

28   1986); United States v. Stoll, 726 F.2d 584, 687-88 (9th Cir. 1984). Fed. R. Crim. P. 16 does not require

     the United States to produce statements by Defendant that it does not intend to use at trial. Moreover,

1   the United States will not produce rebuttal evidence in advance of trial. See United States v. Givens,

2   767 F.2d 574, 584 (9th Cir. 1984).

3       The United States also objects to Defendant's request for an order for production of any rough

4   notes of United States' agents that may exist. Production of these notes, if any exist, is unnecessary

5   because they are not "statements" within the meaning of the Jencks Act unless they contain a

6   substantially verbatim narrative of a witness' assertions and they have been approved or adopted by the

7   witness. See discussion infra Part III.A.12.; see also United States v. Alvarez, 86 F.3d 901, 906 (9th

8   Cir. 1996); United States v. Bobadilla-Lopez, 954 F.2d 519, 522 (9th Cir. 1992). The production of

9   agents' notes is not required under Fed. R. Crim. P. 16 because the United States has "already provided

10  defendant with copies of the formal interview reports prepared therefrom." United States .v Griffin, 659

11  F.2d 932, 941 (9th Cir. 1981). In addition, the United States considers the rough notes of its agents to

12  be United States' work product, which Fed. R. Crim. P. 16(a)(2) specifically exempts from disclosure.

### 3, 28. *Brady* **Material**

14      The United States has complied and will continue to comply with its obligations under Brady

15  v. Maryland, 373 U.S. 83 (1963). Under Brady and United States v. Agurs, 427 U.S. 97 (1976), the

16  government need not disclose "every bit of information that might affect the jury's decision." United

17  States v. Gardner, 611 F.2d 770, 774-75 (9th Cir. 1980). The standard for disclosure is materiality. Id.

18  "Evidence is material under Brady only if there is a reasonable probability that the result of the

19  proceeding would have been different had it been disclosed to the defense." United States v.

20  Antonakeas, 255 F.3d 714, 725 (9th Cir. 2001).

21      The United States will also comply with its obligations to disclose exculpatory evidence under

22  Brady v. Maryland, 373 U.S. 83 (1963). Furthermore, impeachment evidence may constitute Brady

23  material "when the reliability of the witness may be determinative of a criminal defendant's guilt or

24  innocence." United States v. Blanco, 392 F.3d 382, 387 (9th Cir. 2004) (internal quotation marks

25  omitted). However, the United States will not produce rebuttal evidence in advance of trial. See United

26  States v. Givens, 767 F.2d 574, 584 (9th Cir. 1984).

27  //

28  //

**4, 29.  <u>Any Information That May Result in a Lower Sentence</u>**

Defendant claims that the United States must disclose information affecting Defendant's sentencing guidelines because such information is discoverable under <u>Brady v. Maryland</u>, 373 U.S. 83 (1963).  The United States respectfully contends that it has no such disclosure obligation under <u>Brady</u>.

The United States is not obligated under <u>Brady</u> to furnish a defendant with information which he already knows.  <u>See United States v. Taylor</u>, 802 F.2d 1108, 1118 n.5 (9th Cir. 1986).  <u>Brady</u> is a rule of disclosure, and therefore, there can be no violation of <u>Brady</u> if the evidence is already known to the defendant.  In such case, the United States has not suppressed the evidence and consequently has no <u>Brady</u> obligation.  <u>See United States v. Gaggi</u>, 811 F.2d 47, 59 (2d Cir. 1987).

But even assuming Defendant does not already possess the information about factors which might affect his guideline range, the United States would not be required to provide information bearing on Defendant's mitigation of punishment until after Defendant's conviction or plea of guilty and prior to his sentencing date.  <u>See United States v. Juvenile Male</u>, 864 F.2d 641, 647 (9th Cir. 1988) ("No [<u>Brady</u>] violation occurs if the evidence is disclosed to the defendant at a time when the disclosure remains in value.").  Accordingly, Defendant's demand for this information is unwarranted.

**5.  <u>Defendant's Prior Record</u>**

The United States has already provided Defendant with a copy of his criminal record and related court documents, in accordance with Fed. R. Crim. P. 16(a)(1)(D).

**6.  <u>Any Proposed 404(b) or 609 Evidence</u>**

The United States has complied and will continue to comply with its obligations under Rules 404(b) and 609 of the Federal Rules of Evidence ("Fed. R. Evid.").  The United States has already provided Defendant with a copy of his criminal record, in accordance with Fed. R. Crim. P. 16(a)(1)(D).

Furthermore, pursuant to Fed. R. Evid. 404(b) and 609, the United States will provide Defendant with reasonable notice before trial of the general nature of the evidence of any extrinsic acts that it intends to use at trial.  <u>See</u> FED. R. EVID. 404(b), advisory committee's note ("[T]he Committee opted for a generalized notice provision which requires the prosecution to appraise the defense of the general nature of the evidence of extrinsic acts.  The Committee does not intend that the amendment will supercede other rules of admissibility or disclosure[.]").

1    **7, 10.   Evidence Seized and Tangible Objects**

2        The United States has complied and will continue to comply with Fed. R. Crim. P. 16(a)(1)(E)

3    in allowing Defendant an opportunity, upon reasonable notice, to examine, inspect, and copy all

4    evidence seized and/or tangible objects that are within the possession, custody, or control of the United

5    States, and that are either material to the preparation of Defendant's defense, or are intended for use by

6    the United States as evidence during its case-in-chief, or were obtained from or belongs to Defendant.

7        The United States need not, however, produce rebuttal evidence in advance of trial.  See United

8    States v. Givens, 767 F.2d 574, 584 (9th Cir. 1984).

9        **8.    Request for Preservation of Evidence**

10        The United States will preserve all evidence pursuant to an order issued by this Court.  The

11    United States objects to an overbroad request to preserve all physical evidence.  The United States does

12    not oppose Defendant's request to inspect the firearm and ammunition possessed by and seized from

13    Defendant in the instant offense.

14        **9.    *Henthorn* Materials**

15        The United States has complied and will continue to comply with United States v. Henthorn, 931

16    F.2d 29 (9th Cir. 1991) by requesting that all federal agencies involved in the criminal investigation and

17    prosecution review the personnel files of the federal law enforcement inspectors, officers, and special

18    agents whom the United States intends to call at trial and disclose information favorable to the defense

19    that meets the appropriate standard of materiality.  See United States v. Booth, 309 F.3d 566, 574 (9th

20    Cir. 2002) (citing United States v. Jennings, 960 F.2d 1488, 1489 (9th Cir. 1992)).   If the materiality

21    of incriminating information in the personnel files is in doubt, the information will be submitted to the

22    Court for an in camera inspection and review.

23        Defendant's request that the specific prosecutor in this case review the personnel files is

24    unwarranted and unnecessary.  Henthorn expressly provides that it is the "government," not the

25    prosecutor, which must review the personnel files.   Henthorn, 931 F.2d at 30- 31.  Accordingly, the

26    United States will utilize its typical practice for review of these files, which involves requesting

27    designated representatives of the relevant agencies to conduct the reviews.  The United States opposes

28    the request for an order that the prosecutor personally review the personnel files.

1        **11.    Expert Witness**

2        The United States has complied and will continue to comply with Fed. R. Crim. P. 16(a)(1)(G)

3    and provide Defendant with notice and a written summary of any expert testimony that the United States

4    intends to use during its case-in-chief at trial under Fed. R. Evid. 702, 703, or 705.

5        **12, 14, 15, 20, 23.    Evidence of Bias or Motive to Lie / Impeachment Evidence/**
                                   **Evidence Affecting Perception, Recollection, Ability to**
6                                  **Communicate, or Truth Telling / *Giglio* Material**

7        The United States will comply with its obligations to disclose impeachment evidence under

8    Giglio v. United States, 405 U.S. 150 (1972). Moreover, the United States will disclose impeachment

9    evidence, if any exists, when it files its trial memorandum, although it is not required to produce such

10   material until after its witnesses have testified at trial or at a hearing. See United States v. Bernard, 623

11   F.2d 551, 556 (9th Cir. 1979).

12       The United States recognizes its obligation to provide information related to the bias, prejudice

13   or other motivation of United States' trial witnesses as mandated in Napue v. Illinois, 360 U.S. 264

14   (1959). The United States will provide such impeachment material in its possession, if any exists, at

15   the time it files its trial memorandum. At this time, the United States is unaware of any prospective

16   witness that is biased or prejudiced against Defendant or that has a motive to falsify or distort his or her

17   testimony. The United States is unaware of any evidence that any United States witness' ability to

18   perceive, recollect, communicate or tell the truth is impaired.

19       **13.    Evidence of Criminal Investigation of Any United States' Witness**

20       The United States objects to Defendant's overbroad request for evidence of criminal

21   investigations by federal, state, or local authorities into prospective government witnesses. The United

22   States is unaware of any rule of discovery or Ninth Circuit precedent that entitles Defendant to any and

23   all evidence that a prospective government witness is under investigation by federal, state or local

24   authorities. Moreover, as discussed above, the United States has no obligation to disclose information

25   not within its possession, custody or control. See United States v. Gatto, 763 F.2d 1040, 1048 (9th Cir.

26   1985); United States v. Aichele, 941 F.2d 761, 764 (9th Cir. 1991) (California state prisoner's files

27   outside of federal prosecutor's possession); United States v. Chavez-Vernaza, 844 F.2d 1368, 1375 (9th

28   Cir. 1987) (the federal government had no duty to obtain from state officials documents of which it was

aware but over which it had no actual control); cf. <u>Beaver v. United States</u>, 351 F.2d 507 (9th Cir. 1965) (Jencks Act refers to "any statement" of a witness produced by United States which is in possession of United States and does not apply to a recording in possession of state authorities).

The United States recognizes and will comply with its obligations under the rules of discovery and Ninth Circuit precedent to disclose exculpatory and impeachment information.   The United States also recognizes its obligation to provide information--if any exists--related to the bias, prejudice or other motivation of United States' trial witnesses, as mandated in <u>Napue v. Illinois</u>, 360 U.S. 264 (1959), when it files its trial memorandum.

### 16, 17.   <u>Witness Addresses and Names of Witnesses Favorable to the Defendant</u>

The United States objects to Defendant's request for witness addresses.  None of the cases cited by Defendant, nor any rule of discovery, requires the United States to disclose witness addresses.  There is no obligation for the United States to provide addresses of witnesses that the United States intends to call or not call.  Therefore, the United States will not comply with this request.

The United States will produce the names of witnesses it intends to call at trial.  Defendant has already received access to the names of potential witnesses through the discovery sent to his counsel. The United States is not aware of any individuals who were witnesses to Defendant's offense except the law enforcement agentes who apprehended him.  The names of these individuals have already been provided to Defendant.

### 18.   <u>Statements Relevant to the Defense</u>

The United States objects to the request for "any statement relevant to any possible defense or contention" as overbroad and not required by any discovery rule or Ninth Circuit precedent.  In making this request, Defendant relies on <u>United States v. Bailleaux</u>, 685 F.2d 1105 (9th Cir. 1982), <u>overruled on other grounds by</u> <u>Huddleston v. United States</u>, 485 U.S. 681, 108 S.Ct. 1496, 1499 (1988). Defendant asserts that <u>Bailleauz</u> interprets Fed. R. Crim. P. 16 as requiring the United States to disclose "any statement relevant to any possible defense or contention" that Defendant might assert.  [Def Motion  at 6 (internal quotation marks omitted).]  However, the Ninth Circuit holding was not so broad. In fact, the Ninth Circuit, interpreting Fed. R. Crim. P. 16, held: "We believe the Government should disclose any statement <u>made by the defendant</u> that may be relevant to any possible defense or contention

1    that the defendant might assert." <u>See</u> <u>Bailleaux</u>, 685 F.2d at 1114 (emphasis added).  Therefore, the

2    United States will only disclose relevant statements <u>made by Defendant</u> pursuant to this request.

3                    **19.    <u>Jencks Act Material</u>**

4        The United States will fully comply with its discovery obligations under the Jencks Act.  For

5    purposes of the Jencks Act, a "statement" is (1) a written statement made by the witness and signed or

6    otherwise adopted or approved by him, (2) a substantially verbatim, contemporaneously recorded

7    transcription of the witness' oral statement, or (3) a statement by the witness before a grand jury. <u>See</u>

8    18 U.S.C. § 3500(e).  Notes of an interview only constitute statements discoverable under the Jencks

9    Act if the statements are adopted by the witness, as when the notes are read back to a witness to see

10   whether or not the government agent correctly understood what the witness said.  <u>United States v.</u>

11   <u>Boshell</u>, 952 F.2d 1101, 1105 (9th Cir. 1991) (citing <u>Goldberg v. United States</u>, 425 U.S. 94, 98 (1976)).

12   In addition, rough notes by a government agent "are not producible under the Jencks Act due to the

13   incomplete nature of the notes."  <u>United States v. Cedano-Arellano</u>, 332 F.3d 568, 571 (9th Cir. 2004).

14       Production of this material need only occur after the witness making the Jencks Act statements

15   testifies on direct examination.  <u>See</u> <u>United States v. Robertson</u>, 15 F.3d 862, 873 (9th Cir. 1994).

16   Indeed, even material that is potentially exculpatory (and therefore subject to disclosure under <u>Brady</u>)

17   need not be revealed until such time as the witness testifies on direct examination if such material is

18   contained in a witness's Jencks Act statements.  <u>See</u> <u>United States v. Bernard</u>, 623 F.2d 551, 556 (9th

19   Cir. 1979).  Accordingly, the United States reserves the right to withhold Jencks Act statements of any

20   particular witness it deems necessary until after they testify.

21                **21, 22. <u>Agreements/Informants and Cooperating Witnesses</u>**

22       Defendant incorrectly asserts that <u>Roviaro v. United States</u>, 353 U.S. 52 (1957), establishes a

23   <u>per se</u> rule that the United States must disclose the identity and location of confidential informants used

24   in a case.  Rather, the Supreme Court held that disclosure of an informer's identity is required only

25   where disclosure would be relevant to the defense or is essential to a fair determination of a cause.  <u>Id.</u>

26   at 60-61.  Moreover, in <u>United States v. Jones</u>, 612 F.2d 453 (9th Cir. 1979), the Ninth Circuit held:

27       The trial court correctly ruled that the defense had no right to pretrial discovery of
         information regarding informants and prospective government witnesses under the
28       Federal Rules of Criminal Procedure, the Jencks Act, 18 U.S.C. § 3500, or <u>Brady v.</u>
         <u>Maryland</u>, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963).

1    Id. at 454.  As such, the United States is not obligated to make such a disclosure, if there is in fact

2    anything to disclose, at this point in the case.

3        That said, the United States is unaware of the existence of an informant or any cooperating

4    witnesses in this case.  The United States is also unaware of any agreements between the United States

5    and potential witnesses.  However, as previously stated, the United States will provide Defendant with

6    a list of all witnesses which it intends to call in its case-in-chief at the time the Government's trial

7    memorandum is filed, although delivery of such a list is not required.  See United States v. Dischner,

8    960 F.2d 870 (9th Cir. 1992); United States v. Mills, 810 F.2d 907, 910 (9th Cir. 1987); United States

9    v. Culter, 806 F.2d 933, 936 (9th Cir. 1986).

10        **24.    Personnel Records**

11        As discussed supra Part III.A.9, the United States will instruct all relevant agencies to review

12    the personnel files of government witnesses for information pertaining to dishonesty or impeachment.

13    Defendant has not cited any authority that requires the United States to produce "citizen complaints and

14    other related internal affairs documents." [Def Motion at 7.]  The case cited by Defendant, Pitchess v.

15    Superior Court, 11 Cal.3d 531, 539 (1974) has been superceded by statute.  See Fagan v. Superior Court,

16    111 Cal. App.4th 607 (2003).  Moreover, Pitchess involved a criminal case in which a defendant who

17    claimed to have acted in self-defense sought evidence as to the police officers' use of force on previous

18    occasions.  Pitchess, 11 Cal. 3d at 534, 535.  Pitchess is simply inapplicable to Defendant's case.

19        **25.    Training of Relevant Law Enforcement Officers**

20        The United States strenuously objects to providing to Defendant a copy of all policies, training

21    instructions, and manuals issued by all law enforcement agencies involved in this case.  The requested

22    policies, training instructions, and manuals are irrelevant and do not fall within the scope of Fed. R.

23    Crim. P. 16, or any other statutory or Constitutional disclosure provision.  Even if one or more of the

24    inspectors, officers, or special agents violated his or her own administrative regulations, guidelines, or

25    procedures, such violations would not result in the exclusion of evidence if Defendant's Constitutional

26    and statutory rights were not violated in this case.  United States v. Caceres, 440 U.S. 741, 744 (1979);

27    United States v. Hinton, 222 F.3d 664 (9th Cir. 2000).

28    / /

1

**26.    Performance Goals and Policy Awards**

2      The United States strenuously objects to providing Defendant with information regarding the

3 agency standards used for measuring, compensating, or reprimanding the conduct of all law enforcement

4 officers involved in this case.    The requested information regarding the agency standards used for

5 measuring, compensating, or reprimanding the conduct of the law enforcement officers is irrelevant and

6 does not fall within the scope of Fed. R. Crim. P. 16, exculpatory evidence under <u>Brady</u>, impeachment

7 evidence under <u>Giglio</u>, or any other authority governing disclosure.

8

**27.    Reports of Scientific Tests or Examinations**

9      The United States will provide Defendant with any scientific tests or examinations, in

10 accordance with Fed. R. Crim. P. 16(a)(1)(F).

11

**30.    Residual Request**

12      As already indicated, the United States will comply with its discovery obligations in a timely

13 manner.

14

**K.    DISMISS COUNT THREE OF INDICTMENT BECAUSE IT IS DUPLICITOUS**

15      In reviewing an indictment for duplicity, the court must look only to the "four corners" of the

16 count in question.  As the Ninth Circuit explained, the court's task is:

17
18

> not to review the evidence to determine whether it would support charging several crimes
> rather than one, but rather solely to assess whether the indictment itself can be read to
> charge only one violation in each count.

19 <u>United States v. Martin</u>, 4 F.3d 757, 759 (9th Cir. 1993) (quoting <u>United States v. Yarbrough</u>, 852 F.2d

20 1522, 1530 (9th Cir. 1988)).    An indictment is not duplicitous unless, as a matter of law, the charge

21 necessarily embraces more than a single scheme.  <u>United States v. Morse</u>, 785 F.2d 771 (9th Cir. 1986).

22 If the indictment could be fairly read to charge a single scheme, it is not duplicitous.  <u>Id.</u> at 774.

23      To the extent that Defendant Parker is arguing that Count 3 is duplicitous, he is wrong. [<u>See</u> Def.

24 Mot. at 21.]  Defendant relies on the Eighth Circuit's decision in <u>United States v. Walker</u>, 380 F.3d 391

25 (8th Cir. 2004) to support his duplicitous claim because the Eighth Circuit held that possession of a

26 firearm and ammunition are separate offenses under 18 U.S.C. § 922(g)(1).  However, Defendant fails

27 to acknowledge that the Eighth Circuit noted "all other circuits other than the Eighth Circuit would find

28 that [Defendant] committed only one, not two, offenses." <u>Walker</u>, 380 F.3d at 393 (citing other circuit

decisions, including the Ninth Circuit's decision in <u>United States v. Keen</u>, 104 F.3d 1111, 1118-1120 (9th Cir. 1996)). All the other circuits, including the Ninth Circuit, apply the "unit of prosecution" test from <u>Bell v. United States</u>, 349 U.S. 81 (1955). The unit of prosecution test looks at congressional intent and asks "[w]hat Congress has made the allowable unit of prosecution under a statute which does not explicitly give the answer." <u>Id.</u> at 81.

In <u>Keen</u>, the defendant was arrested for robbing several banks. During the arrest, agents found that defendant simultaneously possessed a firearm and ammunition in the hotel room where the defendant was arrested. The Ninth Circuit analyzed the congressional intent of 18 U.S.C. § 922(g)(1) and held that the simultaneous possession of a firearm and ammunition did not constitute separate units of prosecution. <u>Keen</u>, 104 F.3d at 1119 (applying the "unit of prosecution" test in <u>Bell</u>). <u>See</u> <u>also</u> <u>United States v. Carrasco</u>, 257 F.3d 1045, 1052 (9th Cir. 2001) ("The Government cannot charge a defendant with multiple counts under 922(g)(1) for possession of multiple firearms/ammunition when such firearms/ammunition are discovered at the same time and place.").

Here, Defendant Parker possessed both the firearms and ammunition in the green Mercury SUV that was registered in his name. As such, the simultaneous possession of the firearms and ammunition constitutes only one unit of prosecution, and therefore, the Indictment is not duplicitous. For these reasons, Defendant Parker's motion to dismiss the indictment should be denied.

**J.      COMPEL PRODUCTION OF GRAND JURY TRANSCRIPTS**

Defendants request the Court to compel the production of grand jury transcripts. According to Federal Rule of Criminal Procedure 6(e)(3)(E), "[t]he court may authorize disclosure-at a time, in a manner, and subject to any other conditions that it directs-of a grand-jury matter ... at the request of a defendant who shows that a ground may exist to dismiss the indictment because of a matter that occurred before the grand jury." But "mere 'unsubstantiated, speculative assertions of improprieties in the proceedings' do not supply the 'particular need' required to outweigh the policy of grand jury secrecy." <u>United States v. Ferreboeuf</u>, 632 F.2d 832, 835 (9th Cir.1980).

Here, the reason Defendants seek grand jury transcripts is misguided. Defendants want to show that the grand jury was misled regarding the substance of the conversation had by Defendants in the back of the government vehicle and because Defendant Parker was convicted of a "wobbler". [Def. Mot.

at 20-21.]  First, the transcript provided to Defendants is not "incomplete."  Second, Defendant Parker received his conviction documents establishing that he was convicted of a <u>felony</u> for inflicting corporal injury to a spouse.  Defendants may not, however, go behind the workings of the grand jury in this manner. What matters is the evidence at trial, which will prove beyond a reasonable doubt each of the crimes charged in the Indictment.   As such, this motion should be denied.

## L.    LEAVE TO FILE FURTHER MOTIONS

The United States does not oppose Defendants' request to file further motions if they are based on new discovery or other information not available to Defendants at the time of this motion hearing.

## M.    THE COURT SHOULD DENY MOTION TO SUPPRESS CELL PHONES

Defendant moves to suppress evidence seized from a search of his cellular phones that occurred incident to his arrest. [Def. Suppl. Mot at 3.][3]  The Fourth Amendment protects individuals against unreasonable searches and seizures. U.S. Const. Amend. IV.  "A search incident to arrest" is an exception to the general rule against warrantless searches. <u>See</u> <u>United States v. Hudson</u>, 100 F.3d 1409, 1419 (9th Cir. 1996).  "A search incident to arrest must be conducted at about the same time as the arrest." <u>Id.</u>  The cellular telephone has been considered part of the person that can be searched incident to arrest. <u>See</u> <u>United States v. Finley</u>, 477 F.3d 250, 260 (5th Cir. 2007) (holding that police officer's search of cell phone even after moving defendant from scene of arrest to his residence was "still substantially contemporaneous with his arrest" and, therefore, permissible); <u>see</u> <u>also</u>  <u>United States v. Chadwick</u>, 433 U.S. 1 (1977) (holding that police may search a container within a vehicle without a warrant if they have probable cause to believe the container itself holds contraband or evidence). Recently, the Ninth Circuit held that reasonable suspicion was not needed for customs officials to search a laptop computer or other personal electronic storage devices at the border.  <u>United States v. Arnold</u>, – F.3d –, 2008 WL 1776525 (9th Cir., Apr. 21, 2008); <u>see also</u> <u>United States v. Cortez-Rocha</u>, 394 F.3d 1115, 1122 (9th Cir. 2005) (refusing to fashion a "least restrictive means test").

Defendant's motion to suppress evidence should be denied without an evidentiary hearing because he failed to allege a specific factual dispute and failed to support his contentions with a sworn declaration as required by Crim LR 47.1(g).  Even if Defendant could articulate a specific factual

---

[3] "Def Suppl Mot" refers to Defendant Parker's Motions, Docket No. 32, filed on April 15, 2008.

1    dispute, the search of a cell phone, which is a "personal electronic storage device", incident to arrest,

2    complied with the Fourth Amendment.

3        Even assuming the search of the cellular telephones possessed by Defendants occurred, which

4    the United States contends it did not, the doctrine of inevitable discovery would apply because the

5    United States obtained a search warrant for each of the cellular telephones based upon the same

6    statement of probable cause contained in the Complaint [see Exhibit 1] and without the use of any of

7    the information obtained from the search.  Under "inevitable discovery " doctrine, if, by following

8    routine procedures, police would inevitably have uncovered same evidence alleged to have been

9    uncovered via unlawful search and seizure, then evidence is not suppressed despite constitutional

10   violation.  United States v. Ankeny, 502 F.3d 829, 835 (9th Cir. 2007) (relying on Nix v. Williams, 467

11   U.S. 431 (1984)).  Since the United States uncovered the same evidence via search warrant as it had

12   seized incident to arrest, there is no constitutional violation.  As such, the motion should be denied.

13       The United States contends that the search was lawful and complied with the Fourth

14   Amendment.  Defendants contend that the United States violated the Electronic Communications

15   Privacy Act. [Def Suppl Mot at 3.] Any violation of the Electronic Communications Privacy Act, which

16   is a civil statute, would be a civil matter, not a criminal matter.  As such, suppression of the evidence

17   is not a remedy for the violation of a civil statute.  The Court should deny Defendants' motion.

18       **N.    <u>THE COURT SHOULD NOT SEVER COUNT FIVE</u>**

19       Federal Rule of Criminal Procedure 8(a) states, in pertinent part:

20       The indictment or information may charge a defendant in separate counts with 2 or more
         offenses if the offenses charged-whether felonies or misdemeanors or both-are of the
21       same or similar character, or are based on the same act or transaction, or are connected
         with or constitute parts of a common scheme or plan.
22

23   Fed.R.Crim.P. 8(a). Joinder is the rule rather than the exception. See United States v. Armstrong, 621

24   F.2d 951, 954 (9th Cir.1980).  Joinder of the counts is proper under Rule 8(a) because the drug offenses

25   are of the same or similar character of the firearm offense and constitute parts of a common scheme or

26   plan – Defendant allegedly used the firearms and ammunition as tools in his drug trade.  Cf. United

27   States v. Begun, 446 F.2d 32 (9th Cir. 1971) (finding joinder of narcotics counts with illegal possession

28   of firearms counts proper under Rule 8(a)).  Moreover, joinder under Rule 8(a) is proper because

     testimonial and physical evidence relating to the location, discovery, and seizure of the firearms is

common to all three counts – Defendant Parker's marijuana was seized from one of his vehicles at the residence he was staying in an area where additional ammunition was seized. See United States v. VonWillie, 59 F.3d 922, 929 (9th Cir.1995). For this reason, the severance motion should be denied.

Rule 14 provides in part, "If the joinder of offenses . . . in an indictment . . . appears to prejudice a defendant or the government, the court may order separate trials of counts, . . . or provide any other relief that justice requires." Fed. R. Crim. P. 14(a). Offenses that are "properly joined under Rule 8 may be severed under Rule 14 if joinder is prejudicial." United States v. Johnson, 820 F.2d 1065, 1070 (9th Cir. 1987). When considering the prejudicial effect of the joinder of counts, the trial court must weigh the potential prejudice "against the definite advantage to the administration of justice which is achieved by disposing of two or more closely related issues in one trial." Bayless v. United States, 381 F.2d 67, 72 (9th Cir. 1967) (citations omitted).

The United States objects to any severance of the counts in the indictment. As to spillage and compartmentalization, Defendant Parker's motion to sever Count Five should be denied because a jury is capable of compartmentalizing Defendant Parker's role in the conspiracy from that of co-Defendant Wittmer's role, and this Court may consider giving appropriate limiting instructions during the course of the trial, as well as in the jury instructions. See, e.g., United States v. Ponce, 51 F.3d 820, 831 (9th Cir. 1995); United States v. Johnson, 297 F.3d 845, 855 (9th Cir. 2002) ("[I]f the district court attempted to cure any risk of prejudice with proper limiting instructions, a defendant must also show that the curative instructions were inadequate.").

Any prejudice to Defendant Parker can be avoided. Limiting the jury's consideration of required elements of an indicted offense is contrary to the presumption against special verdicts in criminal cases. United States v. Aguilar, 883 F.2d 662, 690 (9th Cir. 1989), cert. denied, 498 U.S. 1046 (1991). The bifurcation order removes an element of the crime from the jury's consideration, prevents the government from having its case decided by the jury, and changes the very nature of the charged crime. See United States v. Gilliam, 994 F.2d 97, 102 (9th Cir. 1993) ("There is a significant difference, however, between a rule formulated to limit the admissibility of potentially prejudicial evidence and a rule that eliminates an element of a crime legislated by Congress."). Again, a limiting instructions may be given by the Court when necessary. For this reason, the severance motion should be denied.

1

## IV

## <u>CONCLUSION</u>

For the foregoing reasons, the United States requests the Court deny Defendant's Motions referenced-above, unless unopposed.

DATED: May 12, 2008.

Respectfully submitted,

KAREN P. HEWITT
United States Attorney

/s/ *Joseph J.M. Orabona*
JOSEPH J.M. ORABONA
Assistant United States Attorney

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | Case No. 08CR0854-LAB |
| Plaintiff, | ) | |
| v. | ) | |
| RODNEY PARKER (1), | ) | **CERTIFICATE OF SERVICE** |
| ANGELA WITTMER (2), | ) | |
| Defendant. | ) | |

IT IS HEREBY CERTIFIED THAT:

I, Joseph J.M. Orabona, am a citizen of the United States and am at least eighteen years of age. My business address is 880 Front Street, Room 6293, San Diego, California 92101-8893.

I am not a party to the above-entitled action. I have caused service of the **United States Response in Opposition to Defendants' Motions**, as lead counsel for the United States, on the following parties by electronically filing the foregoing with the Clerk of the District Court using its ECF System, which electronically notifies them:

1.  Gregory T. Murphy
    Federal Defenders of San Diego, Inc.
    225 Broadway, Suite 900
    San Diego, California 92101-5008
    Tel:   (619) 234-8501
    Fax:  (619) 687-2666
    Email: gregory_murphy@fd.org
    *Lead Attorney for Defendant Parker*

2.  Maxine I. Dobro
    Law Offices of Maxine I. Dobro
    105 West F Street, 3rd Floor
    San Diego, California 92101-6036
    Tel:   (619) 232-5044
    Fax:  (619) 233-3221
    Email: maxdobro@aol.com
    *Lead Attorney for Defendant Wittmer*

A hard copy will be delivered to chambers.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on May 12, 2008.

/s/ **Joseph J.M. Orabona**
JOSEPH J.M. ORABONA
Assistant United States Attorney

08CR0854-LAB